**CENTURY BANK OF GAINESVILLE**

v.

**The UNITED STATES.**

No. 318–78.

United States Court of Claims.

Sept. 10, 1980.

Allison E. Folds, Gainesville, Fla., attorney of record, for plaintiff.

Zinora Mona Mitchell, Dept. of Justice, Washington, D.C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D.C. for defendant;. Lynn J. Bush, Washington, D.C. of counsel.

Before COWEN, Senior Judge, and DAVIS and NICHOLS, Judges.

## ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge:

Century bank of Gainesville, Florida, was part of the federal food stamp program. It collected from retail and wholesale food concerns (and from other authorized persons) used food stamp coupons with a face value of over $12,000. Plaintiff then gave credit to the collectors for this amount. The coupons were marked and endorsed by the submitting parties, and the bank cancelled the stamp coupons. On October 20, 1977, plaintiff properly prepared the cancelled stamps for mailing, as required, to the Federal Reserve Bank in Jacksonville. The stamps were placed in a federal reserve cloth bag, sealed with a metal clip, and tagged with the Jacksonville Reserve Bank address (and with the notation "cancelled food stamps"). Postage was affixed. The bag was then placed, along with other mail, in the rear of the bank lobby after the bank had closed and its doors had been locked. Prior to the mailman's arrival, the bank's mailroom attendant noticed that the bag was missing and reported this to the plaintiff's management. The coupons were nev-

er mailed or placed in custody of the postal service; they never reached the Federal Reserve Bank. After an inquiry by the Government the person removing the coupons was never identified. Defendant thereafter refused plaintiff's claim for the value of the stolen food stamps coupons, and plaintiff brought this suit. It is not said by either party, that plaintiff was negligent in handling the coupons or in discharging its obligations under the Food Stamp Act of 1964.

■ On these cross–motions for summary judgment, the Government's defense rests primarily on a food stamp regulation which, defendant says, absolves it of liability for cancelled stamps which have not reached the mails or other carrier but are still in the custody of the accepting bank. Section 2013 of Title 7, U.S.Code [part of the Food Stamp Program] has given the Secretary of Agriculture authority to issue regulations consistent with the program which are necessary or appropriate for effective and efficient administration. Section 2019 (formerly section 2018) then declares that "Regulations issued pursuant to this chapter [Food Stamp Program] shall provide for the redemption of coupons accepted by retail stores through approved wholesale food concerns or through banks, with the cooperation of the Treasury Department * * *." Under this authority the Secretary promulgated a relevant regulation dealing with food stamp redemption. 7 C.F.R. 272.5 provides in pertinent part:

(c)(1) FNS [Food and Nutrition Service] shall be liable for losses of shipments of cancelled coupons while in transit to Federal Reserve or correspondent banks: *Provided*, That:

(i) Coupons shall not be deemed to be in transit while in the custody and care of either to transmitting bank, or of the Federal Reserve, or of the correspondent bank, or of their employees.

The parties have exhibited fine embroidered filigree on whether or not there could be implied from this regulation a contract to pay the Century Bank for the stolen coupons. We think, however, that the whole case turns more directly on the meaning and validity of the regulation we have just set forth. Did it, and could it, free the United States from liability on used stamps lost or stolen from the receiving bank before the latter puts them into transit to the Federal Reserve Bank?

The regulation does not state explicitly that the Government is not liable for such losses, but we think that is its necessary content. The directive covers those instances in which the Federal Government [1]–aside from the possible liability of the Federal Reserve Bank for its own losses–will be liable for lost or stolen coupons. The only situation covered is that where the cancelled coupons are "in transit to Federal Reserve or correspondent banks." *Id.* It is specifically provided that coupons are not in transit "while in the custody and care of * * * the transmitting bank * * *." *Id.* That was obviously the fact here while the bag was in the Century Bank's own locked lobby, together with other mail. We cannot read the regulation as leaving open the case of pre–transit or while–in–custody loss. There is an undisputed assumption of liability for losses of coupons "in transit," and "in transit" is then expressly defined as excluding the custody and care of the transmitting bank–here the plaintiff. So careful is the regulation to restrict the Government's liability to losses truly in transit that it takes special pains to exclude losses occurring, presumably after transit, while in the custody of the Federal Reserve Bank, or the correspondent bank, or of their employees. This precise definition of "in transit" would be wholly gainsaid if the regulation allowed recovery from the United States of losses suffered before transit. In addition, the very detailed requirements for proof to the Food and Nutrition Service by a transmitting bank of a loss "in transit", 7 C.F.R. §§ 272.5(c)(1), (ii), (iii); 272.5(c)(3), belies the theory that the regulation contemplated the possibility that the Food and Nutrition

---

1. The Food and Nutrition Service is a constituent part of the Department of Agriculture which is, of course, an integral part of the Federal Government.

Service would be liable for pre–transit losses. There is no mention of, or requirements for, federal ability for that type of loss, as there is for "in transit" losses. The only instructions for proof of loss are those for "in transit" losses. It is well nigh impossible, in short, for us to read the regulation as authorizing or contemplating reimbursement of a pre–transit loss.

Aside from the claim that the regulation leaves open government liability for pre–transit losses by a transmitting bank from its own custody–a position we have just rejected–Century Bank proffers other unacceptable contentions as to the scope of the regulation. Invoking *New Mexico Dept. of Health and Social Service v. Secretary of Agriculture*, 376 F.Supp. 953 (D.N.M.1973), the Bank would have us interpret the regulation, 7 C.F.R. § 272.5, as merely laying down standards of pre–transit due care for a bank to follow before it can hold the Government liable. In view of the express and limited liability provisions we have set forth and construed, we are unable to read the simple requirements as to endorsement, cancellation, and transmittal of coupons as extending the specific liability provisions to cover pre–transit losses where the bank has followed instructions.[2] To do so, as we have said, would make a mockery of the narrow assumption of liability established by the Department of Agriculture. *New Mexico Dept. of Health and Social Services* was a very different case. Burglars stole unused food stamps from the New Mexico Department and the federal Department of Agriculture demanded that New Mexico pay the Food and Nutrition Service for the stamps. The regulations said no more than that the state agency should "be accounta-

ble" or "account fully" to the Federal Government for the lost or stolen stamps. Holding the regulation ambiguous on its face–did it impose strict liability on the agency or merely the common law standard of due care?[3]–the District Court ruled that the belated departmental view of strict liability was incorrect and the reasonable care was enough for the state. *Id.* at 955–56. Now we have, on the contrary, a much more express regulation which is not at all ambiguous but very plain in its regulation of liability on the part of United States–and there is no question of the bank's liability to the Government (but just the reverse).

Then, plaintiff says that we should interpret the regulation in the light of FNS(FS) Instruction 728–2 ("Procedures for Commercial Banks in Handling Food Coupons Under the Food Stamp Program") which Century Bank saw (though it says it never saw the regulation). This instruction summarizes and is in much the same form as the regulation but while it speaks only of governmental liability for "in transit" losses it does not contain the regulation's language excluding losses while in the bank's custody and care. *See supra.* This omission has no significance. The instruction paraphrased but did not displace the regulation.[4] We think that there was, in substance, no difference between the two but if there is thought to be the explicit wording of the regulation obviously governs, even for the Century Bank. *Cf. American Bank of San Antonio v. United States*, 633 F.2d 543, 546, 209 Ct.Cl. ——, —— (1980).

■ Lastly, plaintiff urges that the cancelled and used stamps were worthless, the

---

**2.** The regulation's simple instructions on how the bank is to treat the coupons are by no means all–inclusive. There are for instance, no requirements on safe–keeping of the coupons or due diligence. The directions in the regulations all seem to go to the necessary steps for cancellation of the coupons and for preparation for redemption by the Federal Reserve Bank or correspondent bank.

**3.** The latter would follow from the fiduciary nature of the state agency's relationship to the Federal Government with regard to the agen-

cy's possession of the unused food stamps issued by the Federal Government. *Id.* at 954–55.

**4.** For instance the instruction states expressly that the Government is liable for in–transit losses only if the "transmitting bank used due diligence and care in making the shipment. * * *" FNS(FS) Instruction 728–2 § III C (1)(a). The regulation did not contain the explicit statement but may be assumed to embody it.

bank had already paid on them, and there was no reason for the Government to refuse reimbursement. This plaint merges into the issue of validity, but insofar as it bears on the meaning of the regulation we deal with it here. The answer is that, though the stamps were used, it was important to the Government, in its administration of the Food Stamp Program, to have a full accounting of them and their disposition. The Federal Reserve Bank had an elaborate system for receiving, counting, and checking them, once received. If lost before receipt, this system would be forestalled and the Government could have its troubles in determining whether the loss had actually occurred, and if so was intentional, negligent, or despite due care. The regulation solves this problem by leaving the Century Bank with its own absolute liability for coupons in its own custody which are lost or stolen before transit. In that way the Government does not have to pay for coupons it does not receive, and likewise does not have the burden of investigating each pre–transit bank loss to see if it was real and whose fault it was.

For these reasons, the Secretary had the power to issue a regulation of this stripe. Congress had given him broad regulatory authority. *See supra.* The Government is not necessarily liable for coupons lost by the bank while in the bank's own custody, and can therefore free itself of such liability unless that position must be characterized as unreasonable. It is not unreasonable, however, to have the Federal Government assume liability only for "in transit" losses where the transmitting bank had no control and there was no non–federal entity which could be responsible.[5] Plaintiff does not argue that the Government was strictly liable even though the bank was negligent or deliberately false. But if negligence or fault was a disqualification it would have involved the Government in a series of perhaps cumbersome inquires deciding the circumstances of each pre–transit bank loss to see whether or not the bank should be reim-

bursed. The Government was not required to disregard the fact that the bank had custody and care, and that it would not be outrageous to have the custodian to bear its own responsibility. The Secretary could, accordingly, adopt a regulation which set forth a clean rule of no pre–transit federal liability on the part of the Federal Government.

Defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the petition is dismissed.

5. Even for "in transit" losses, the Government assumed liability only where the bank was un-

able to recover the loss from the carrier.