**FIRST FLORIDA BANK, N.A., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 91–1206C.

United States Claims Court.

Aug. 6, 1992.

Andrew K. MacFarlane, Tampa, Fla., for plaintiff.

Sean P. Murphy, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court on cross-motions for summary judgment. The issue to be decided is liability for the loss of $41,200.00 in cancelled food stamp coupons. Argument is deemed unnecessary.

### FACTS

The following facts are undisputed, unless otherwise noted. The Food Stamp Act of 1964, 7 U.S.C. § 2024(b) (1988), authorizes the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") to administer the federal Food Stamp Program. The coupons are obligations of the United States, redeemable at face value by the United States Treasury. 7 U.S.C. §§ 2013, 2023(a). On behalf of the FNS, the Federal Reserve Bank of Atlanta, Miami Branch ("FRB Miami"), as one of the fiscal agents of the United States, is to receive cancelled food stamp coupons from member-insured financial institutions of the Federal Reserve System, located in Florida, and charge those items to the general account of the Treasurer of the United States.[1]

On February 6, 1981, FRB Miami entered into a contract with Courier Dispatch, Inc. ("CDI"), for general courier services.[2] The contract provides:

16. As part of the incoming transportation system, Carrier shall establish and maintain "deposit stations" strategically located in the cities or counties listed on Schedule A. Carrier will accept delivery

---

1. 7 C.F.R. § 278.5 (1985), provides, in pertinent part:

(a) Accepting coupons. (1) Financial institutions that are insured by the Federal Deposit Insurance Corporation (FDIC) or the Federal Savings and Loan Insurance Corporation (FSLIC) may redeem coupons only from authorized retail food stores, meal services, and wholesale food concerns in accordance with the rules contained in this Part and instructions of the Federal Reserve Banks. Coupons submitted to insured financial institutions for credit or cash must be properly endorsed in accordance with § 278.4 of this part and shall be accompanied by a properly completed and signed redemption certificate.

. . . .

(4) Insured financial institutions which are members of the Federal Reserve System, insured nonmember clearing institutions, and insured nonmember institutions which have arranged with a Federal Reserve Bank to deposit coupons for credit to the account of a member institution on the books of a Federal Reserve Bank may forward coupons directly to the Federal Reserve Bank. Other insured financial institutions may forward cancelled coupons through ordinary collection channels.

(b) Role of Federal Reserve Banks. Federal Reserve Banks, acting as fiscal agents of the United States, will receive cancel[l]ed coupons for collection as cash items from armed forces installations, member insured financial institutions of the Federal Reserve System, nonmember clearing insured financial institutions, and nonmember insured financial institutions which have arranged with a Federal Reserve Bank to deposit coupons for credit to the account of a member insured financial institution on the books of the Federal Reserve Bank, and will charge those items to the general account of the Treasurer of the United States.

2. Paragraph 3 of the contract reads, in part:

Carrier will be liable for the safekeeping and prompt delivery of items from the time they are received into its possession until they are delivered to the designated consignee; or in the event that delivery cannot be completed, then until such items are returned to the consignor. Carrier will indemnify Reserve Bank against all actions, proceedings, claims or demands by any person or persons whatsoever resulting from Carrier's loss or mysterious disappearance of any items, and against all costs, damages or expenses, including court costs and reasonable attorney's fees, sustained or incurred by reason of any actual or alleged loss or mysterious disappearance. . . .

from Banks approved by the Reserve Bank, valuable items including, without limitation, returned unpaid checks, data processing media, cash letters, drafts, notes and other media of exchange together with accompanying documents, all hereinafter referred · to individually or collectively as "items."

17. Carrier will use "deposit stations" of a type acceptable to Reserve Bank and these stations will be located at mutually agreed upon locations in the cities or counties listed in Schedule A. . . .

. . . .

19. Reserve Bank agrees to pay Carrier for maintaining deposit stations and providing transportation to its Miami office on a monthly basis in accordance with the service required as outlined in the Service and Compensation Schedule A.

Defendant states that the Request for Proposal ("RFP") to the contract between FRB Miami and CDI specifies that food coupons are not "cash items" covered by the check courier contracts. This RFP is not part of the record before the Claims Court. However, defendant cites an RFP that preceded the RFP for CDI's contract, which sets forth the policy for incoming items:

Deposit stations are established for the restricted use of Miami zone banks . . . for the purpose of transporting cash letters to be processed by the Federal Reserve. The deposit station may be used for the consolidation of and transportation for non-negotiable bank-related items. The Federal Reserve will, however, accept no responsibility for the transportation or delivery of these items. The following· items are not check cash letters processed by the Miami Federal Reserve and must be delivered only to the appropriate unit or department.

a. Food Stamps

Food stamp cash letters will not be accepted by the Check Collection Department and must be delivered to the Cash Services Department during the normal operation hours of that department. . . .

Prior to October 31, 1986, First Florida Bank, N.A. ("plaintiff"), redeemed, without charge, the food stamp coupons that are the subject matter of this action from its customers—retail food stores, meal services, and wholesale food concerns. Thereupon plaintiff paid $41,200.00 into the accounts of its customers and debited its own account by the same amount.

Throughout 1986 plaintiff regularly employed CDI to deliver cancelled food stamps to the Fort Myers deposit station of FRB Miami, which is located in the parking lot of a gasoline station.[3] CDI then transported the cancelled food stamps to FRB Miami, without charge to plaintiff. On October 30 and 31, 1986, plaintiff prepared a Food Coupon Deposit Document and inserted it along with $41,200.00 of cancelled food stamps in a canvas bag.

On or about 9:00 p.m. on October 31, 1986, Donald L. Keller of CDI picked up "a large bag of food stamps, big white bag" from plaintiff's offices at 2081 First Street, Fort Myers, Florida. Deposition of Donald L. Keller, May 6, 1988, at 9, 12. Mr. Keller then transported the canvas bag to the deposit station. The canvas bag, along with its contents, was picked up at the deposit station on or about 11:48 p.m. by James B. Brooks, a CDI driver, for delivery to the office of FRB Miami. Mr. Brooks testified, as follows:

Q. . . . can you tell if any of the items that you took off the van from Lee County Bank were food stamps?
A. I did not differentiate them, if they were. When we had them, they were all Fed work and I didn't differentiate.

. . . .

Q. So from that . . . [manifest], are you telling me that by looking at that document, you assumed that you didn't make a food stamp pick-up on that date?
A. Not necessarily, because I didn't pick-up anything showing—we didn't keep a record then of what we got. . . .

Deposition of James B. Brooks, May 6, 1988, at 18. However, Mr. Brooks also testified that "[t]here was a bag there that

**3.** The contract governing this relationship is not     part of the record.

looked like what they usually send ... [food stamps] in." *Id.* at 12. Plaintiff has not taken a position as to whether the food stamps were lost in transit or after delivery.[4]

FRB Miami Operations Bulletin No. 151 requires food coupons to be delivered Monday through Friday, from 8:30 a.m. to 2:30 p.m., at the designated food coupon counter.[5] The food coupons at issue, if included in the delivery to FRB Miami, arrived at 7:48 a.m. on a Saturday, November 11, 1986, and were left on the loading dock. FRB Miami personnel could not locate the coupons at FRB Miami. By letter dated November 26, 1986, Patrick K. Barron, Assistant Vice President of FRB Miami, informed W. Ronnie Caldwell, Senior Vice President of the Federal Reserve Bank of Atlanta ("FRB Atlanta") of the possible lost food coupon shipment. The letter set out the following steps that FRB Miami took to investigate the matter:

1. All food coupon manifests and food coupon cash letters received in our office from October 30, 1986 through November 3, 1986 were received to ensure the deposit had not been received.

2. The Check Collection Department was informed of the problem and reviewed the Transfer of Valuables records for October 30, 1986 through November 3, 1986 to check for food coupon deliveries which had been received through Dispatch. The department also performed an area check to ensure the food coupons had not been inadvertently mishandled.

3. The Accounting Department checked all Transfer of Valuables received from the Check Collection Department from October 30, 1986 through November 3, 1986 for the food coupon shipment.

Plaintiff contends that CDI misdelivered the food coupons. Sharon F. Flesvig, a teller employed by plaintiff, stated in her deposition that the courier "had had the food stamps, he took them, but upon delivery, he put them in the wrong area or on the wrong plane.... I know that they were not put properly." Deposition of Sharon F. Flesvig, May 6, 1988, at 19. Plaintiff sought payment for the loss of the food coupons from CDI on the basis that CDI lost the food coupons or misdelivered them. Plaintiff received a check for $7,500.00 on November 11, 1990, from CDI, apparently representing a settlement of plaintiff's claim.

On August 10, 1990, plaintiff forwarded a letter to FRB Atlanta asserting a claim for $41,200.00 in cancelled food coupons. By letter dated November 5, 1990, FRB Atlanta responded asserting that FRB Miami had no record of receiving the shipment. In this letter FRB Atlanta further stated:

We also disagree with your assertion that CDI was acting as the Reserve Bank's agent in transporting the food stamps from the Fort Myers deposit station to Miami. Deposit stations are used as consolidating points for inbound shipments of checks by depository institutions to Miami. The Reserve Bank's policy is to permit the deposit stations to be used for the consolidation and transportation of food coupons on a "piggy-back" basis. While we have been unable to locate a copy of our Request for Proposal ("RFP") that resulted in the contract in effect with CDI in 1986, the terms of

---

4. Plaintiff's Answer to Interrogatory No. 20 reveals:

State whether it is your position that the food stamps or food coupons were lost in transit or whether it is your position that such items were lost after delivery to the Federal Reserve Bank of Atlanta, Miami Branch, and the basis for such position. Include in your answer all facts you rely upon to support your answer and any facts discovered in your prior litigation with CDI which relate in any manner to your position that the items were either lost in transit or after delivery.

Answer:

Not yet determined.

5. Operations Bulletin No. 151, dated July 31, 1978, states:

The Check Collection Department cannot accept deliveries of Food Coupons. Food Coupons are classified as valuables similar to securities, currency, and coin. Therefore, they are received and processed only by the Currency and Coin Department. All Food Coupons should be delivered to the Currency and Coin Department between 8:30 a.m. and 2:30 p.m.

our preceding RFP document specified that food coupons are not "cash items" covered by our check courier contracts and that the Reserve Bank accepts no responsibility for the transportation or delivery of food coupons.

On August 22, 1990, USDA denied any liability in connection with plaintiff's claim for the loss of food coupons. In that denial USDA relied upon 7 C.F.R. § 278.5(c) (1985), which disclaimed liability for coupons lost, stolen, or destroyed, while in transit from a bank to a Federal Reserve Bank.

In its motion for summary judgment on Count I,[6] plaintiff claims that liability for the loss of food coupons attached at the time Mr. Keller of CDI delivered the food coupons to the Fort Myers deposit station. In this regard plaintiff asserts that the Fort Myers deposit station was under FRB Miami's control and that Mr. Keller was an "agent" of FRB Miami. Defendant contends that the deposit station is controlled by CDI and that Mr. Keller was an agent of plaintiff for purposes of delivering food stamps. Further, defendant claims that liability for the loss is disclaimed in Operating Circular No. 7, rev. Aug. 11, 1986,[7] reiterating 7 C.F.R. § 278.5(c), and that plaintiff is strictly liable for the loss of the food coupons.

## DISCUSSION

■ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a ma-

terial fact is genuine if the evidence would permit a reasonable jury to return a verdict in favor of the non-movant. *Id.* Both plaintiff and defendant, as the moving parties, have the burden of establishing that there are no genuine material issues in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In the capacity of opposing each other's motion, plaintiff and defendant have the burden of providing sufficient evidence, not necessarily admissible at trial, to show that a genuine issue of material fact indeed exists. *Celotex,* 477 U.S. at 322, 324, 106 S.Ct. at 2552, 2553.

To create a genuine issue of fact, the non-movant must do more than present *some* evidence on an issue it asserts is disputed. The Court stated:

[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted.

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir. 1988) (emphasis in original) (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted), and citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

■ In resolving the cross-motions, the court cannot weigh the evidence and determine the truth of the matter on summary judgment. *Anderson,* 477 U.S. at 249, 255, 106 S.Ct. at 2510, 2513. Any evidence presented by the opponent is to be believed

---

6. Counts I and II of the complaint involve the same issues of fact and law except insofar as the first count alleges delivery at the deposit/collection point and the second, delivery to FRB Miami.

7. Operating Circular No. 7 states that "Cancelled Food Coupons should be forwarded to the Food Coupon Unit of the Reserve Bank serving your institution. Corresponding redemption certificates should also be forwarded along with the coupons. Neither the Department of Agriculture nor the Reserve Bank assumes liability for coupons lost in transit to the Federal Reserve Bank (effective September 14, 1984, 7 C.F.R. § 278.5(c)).

and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. Uncontested material facts also have been found consistent with the rule that, in respect of any facts that may be considered as contested, each party, in its capacity as the opponent of summary judgment, is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ The central issue in this case is whether 7 C.F.R. § 278.5(c) operates to disclaim federal liability for the loss of cancelled food coupons. 7 C.F.R. § 278.5(c) provides that FNS

> shall not be liable for the value of any coupons lost, stolen, or destroyed while in the custody of an insured financial institution or for the value of coupons lost, stolen, or destroyed while *in transit* from an insured financial institution to a Federal Reserve Bank.

(Emphasis added.)

■ Plaintiff argues that this disclaimer is inapplicable where an agent of FRB Miami takes possession of food stamps for transportation to the Food Coupon Unit. Plaintiff asserts that, at the time Mr. Keller of CDI delivered the food coupons to the Fort Myers deposit station, plaintiff was no longer the custodian of the cancelled food stamps because the deposit station is under the control of FRB Miami.[8] According to plaintiff, CDI was an agent of FRB Miami for purposes of transporting food stamps from the Fort Myers deposit station to the offices of FRB Miami. Plaintiff cites to the check courier contract between CDI and FRB Miami, which provides that CDI will accept for delivery from banks approved by the Federal Reserve, *inter alia,* "valuable items." Plaintiff contends that the term "valuable items" includes food stamps.

Defendant counters that CDI was FRB Miami's agent only for purposes of transporting "cash items," and not for transporting items not contemplated by the check courier contract (such as food stamps). Defendant states that the RFP to the contract between FRB Miami and CDI specifies that the food coupons are not "cash items" covered by the check courier contracts. This RFP is not part of the record. However, the RFP for the contract preceding CDI's, *see supra* p. 3, explains that the deposit station serves as a consolidation point for certain items and disclaims liability for the transfer of certain items, including food stamps.[9]

Plaintiff relies on *Hettleman v. Bergland,* 642 F.2d 63 (4th Cir.1981), and *Century Bank v. United States,* 225 Ct.Cl. 181, 634 F.2d 554 (1980), for the general proposition that liability for the loss of food stamps should be placed on the entity in the best position to protect against the loss. Specifically, plaintiff notes that the "imposition of strict liability for loss on custodians of stamps is, when reasonable, a valid exercise of authority and is inconsistent with the Act." *Hettleman,* 642 F.2d at 67 (citing the "basic premise" of *Century*

---

8. Defendant makes the additional argument that Operating Circular No. 7 disclaims government liability for the loss of food stamps in transit. This document, which contains general instructions and procedures for deposits of cancelled food coupons with the Federal Reserve Bank, does not have the force of law. Rather, it represents the contractual terms under which FRB Miami/Atlanta agreed to accept food stamps. *See* U.C.C. § 4–103(1) (1989); *Wells Fargo Bank v. Hartford Nat'l Bank & Trust Co.,* 484 F.Supp. 817, 821 (D.Conn.1980).

9. As defendant notes, Federal Reserve Banks providing courier services do receive checks from submitting banks pursuant to the Federal Reserve Bank Act, § 13, 12 U.S.C. § 342. (1988). Pursuant to the Monetary Control Act, § 11A, 12 U.S.C. § 248A (1988), Reserve Banks must price their services to recover their costs.

In contrast, Reserve Banks process food stamps for the USDA as the "fiscal agent" of the United States under the Federal Reserve Bank Act, § 15, 12 U.S.C. § 391. This "fiscal agent" function is not a priced service for which Reserve Banks may charge a fee under the Monetary Control Act. Rather, costs incurred by Reserve Banks are reimbursed by the United States. As fiscal agents, Reserve Banks cannot receive reimbursement for providing such courier services on behalf of the USDA. Thus, defendant asserts, Reserve Banks exclude food coupons from coverage under their check courier contracts.

*Bank*). Plaintiff contends that since FRB Miami, not plaintiff, was custodian of the food stamps, it is unreasonable to impose strict liability on plaintiff for loss of the food coupons. Plaintiff concludes that 7 C.F.R. § 278.5(c) does not operate to disclaim Government liability.

Plaintiff's reliance on *Hettleman* and *Century Bank* is misplaced. The regulation at issue in *Century Bank* explicitly provided for Government liability. 7 C.F.R. § 272.5 provided, in pertinent part:

(c)(1) FNS *shall be liable* for losses of shipments of cancel[l]ed coupons while in transit to Federal Reserve or correspondent banks, except that:

(i) Coupons are not *in transit* while in the custody of the transmitting bank, the Federal Reserve, the correspondent bank, or their employees.

(Emphasis added.) The question before the court in that case was whether the Government was absolved from liability on used stamps lost or stolen from the receiving bank before it put them into transit to the Federal Reserve Bank. *Century Bank*, 225 Ct.Cl. at 183, 634 F.2d at 555. Noting that section 272.5 did not explicitly state that the Government was not liable for such losses, the court in *Century Bank* went on to state that the only instructions for proof of loss were those for "in-transit" losses. *Id.* 225 Ct.Cl. at 183–84, 634 F.2d at 555–56. Thus, the court ruled, "It is well nigh impossible ... for us to read the regulation as authorizing or contemplating reimbursement of a pre-transit loss." *Id.* 225 Ct.Cl. at 184, 634 F.2d at 556.[10]

In the instant matter, the pertinent regulation provides that the Government will not be liable for food coupons lost in transit. 7 C.F.R. § 278.5(c). This regulation, however, unlike the regulation considered in *Century Bank*, does not define "in transit" to exclude a shipment in the custody of the Federal Reserve Bank. The parties have presented elaborate arguments, based on construction of the check courier contract, concerning the agency status of CDI for purposes of transporting the food stamps. These arguments are not persuasive.

If CDI were deemed an agent of either plaintiff or FRB Miami for purposes of transporting the food stamps, the food stamps would not be "in transit," since the agent would be considered to possess the stamps on behalf of the principal and they would not be in transit to the principal. This is clearly not a scenario contemplated by section 278.5(c). The term "in transit," for purposes of the Food Stamp Program, therefore must refer to food stamps in the custody of any party other than the participating bank or the Federal Reserve Bank for purposes of transporting the food stamps from one to the other. The food stamps would be "in transit" while they were in the possession of CDI, in CDI's capacity as a courier, not an agent, for either plaintiff or FRB Miami. This definition is consistent with the plain meaning of the pertinent regulation which emphasizes transit "from" and "to" the insured financial institution and the Federal Reserve Bank.

---

**10.** Moreover, in *Century Bank* the court held that "[i]t is not unreasonable ... to have the Federal Government assume liability only for 'in transit' losses, where the transmitting bank had no control and there was no *non-federal entity* which could be responsible...." 225 Ct. Cl. at 186, 634 F.2d at 557 (emphasis added). In this case it is not disputed that the food coupons were lost or misdelivered by CDI. The check courier contract entered into by CDI and FRB Miami contains an indemnification clause. This clause provides:

Carrier will be liable for safekeeping and prompt delivery of items from the time they are received into its possession until they are delivered to the designated consignee; or in the event that delivery cannot be completed,

then until such items are returned to the consigner carrier will indemnify Reserve Bank against all actions, proceedings, claims or demands by any person or persons whatsoever resulting from Carrier's loss or mysterious disappearance of any items, and against all costs, damages or expenses, including court costs and reasonable attorney's fees, sustained or incurred by reason of any actual or alleged loss or mysterious disappearance....

Def's Br. filed June 3, 1992, App. 3. Thus, under the rationale of *Century Bank*, it would be unreasonable to impose liability on the Government because a "non-federal" entity could be held responsible. 225 Ct.Cl. at 186, 634 F.2d at 557.

■ Defendant argues that it is entitled to summary judgment because plaintiff has failed to come forward with affirmative evidence that the food stamps were delivered or misdelivered to FRB Miami. However, Mr. Keller of CDI has testified that he picked up the food stamps from plaintiff and delivered them to the Fort Myers deposit station. Specifically, Mr. Keller testified, and his driver's manifest reflects, that he collected 3 bags and 5 boxes from plaintiff and delivered them to the deposit station. One of these bags was "a large bag of food stamps, big white bag." Keller Dep. at 9. Mr. Brooks of CDI has testified that he collected 3 bags and 5 boxes from the deposit station marked as originating with plaintiff, and designated for delivery to FRB Miami. Mr. Brooks further stated that "there was a bag there that looked like what they usually send ... [food stamps] in." Brooks Dep. at 12. Mr. Brooks' manifest, however, merely indicates that he made a pick-up at the deposit station and that he delivered a total of ten bags and six boxes to FRB Miami. While it is true that there is no affirmative evidence that the food stamps ever arrived at FRB Miami, a reasonable inference may be drawn that Mr. Brooks picked up the food stamps at the deposit station for delivery to FRB Miami. For purposes of the instant motion, each party is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards*, 749 F.2d at 1574.

A material dispute exists as to whether the food stamps were lost or misdelivered. No evidence appears in the record that Mr. Brooks of CDI ever delivered the food stamps to FRB Miami, or, if he did, that they were delivered to the proper location. 7 C.F.R. § 278.5(c) does not contemplate misdelivery. Indeed, it is well established that the term "transit" does not include the term "misdelivery." *Davis, Director General v. John L. Roper Lumber Co.*, 269 U.S. 158, 161–62, 46 S.Ct. 28, 29, 70 L.Ed. 209 (1925) ("Loading precedes, and unloading follows, transit. In the ordinary and usual meaning of the word, "transit" ends before delivery at destination."). Thus, if plaintiff were to establish that the food stamps were "misdelivered" to the Federal Reserve Bank, section 278.5(c) would not disclaim Government liability for the food stamps. On the other hand, if the court were to find that the coupons were "lost" in transit, *i.e.*, while in the possession of CDI, then Government liability could not attach. Because the factual record is undeveloped on this material point, the case is not appropriate for summary judgment.

## CONCLUSION

The parties' cross-motions for summary judgment are denied. This case should be amenable to resolution by a reasonable settlement, as the parties have been unable to develop the facts necessary to resolve the disputed factual issues. Accordingly, based on the foregoing,

IT IS ORDERED, as follows:

A status conference shall be held at 3:00 p.m. on Thursday, September 24, 1992, in the National Courts Building. Counsel for plaintiff may participate by telephone conference call to be placed by the court. The parties shall be prepared to set dates for completing discovery, filing the pretrial memoranda, and holding the pretrial conference and trial before December 1992.